UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIGUEL BURGOS,<br><br>          Plaintiff,<br><br> v.<br><br>JAJ CONTRACT FURNITURE INC. *and*<br>JAMONE COUNCIL,<br><br>          Defendants. | No. 23-CV-3739 (KMK)<br><br>ORDER |

Appearances:

Clara Lam, Esq.
Brown Kwon & Lam, LLP
New York, NY
*Counsel for Plaintiff*

Jasmine Guadalupe, Esq.
McMahon, Martine & Gallagher, LLP
Brooklyn, NY
*Counsel for Defendants*

Mathew Paulose, Jr, Esq.
Paulose & Associates PLLC
Bronxville, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

  Miguel Burgos ("Plaintiff"), on behalf of himself and similarly situated employees, brought this Action against his employer, JAJ Contract Furniture Inc. (the "Corporate Defendant"), and Jamone Council (the "Individual Defendant," and together, "Defendants") pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), and the New York Labor Law, §§ 190 *et seq.*, §§ 650 *et seq.* ("NYLL"). (*See generally* Compl. (Dkt. No. 1).) The Parties now seek approval of their proposed settlement. (Letter from Clara Lam,

Esq., to Court (Mar. 24, 2024) ("Lam Letter") (Dkt. No. 33).) For the following reasons, the Parties' application is denied without prejudice.

## I. Background

### A. Factual Background

Defendants hired Plaintiff on March 4, 2019. (Compl. ¶ 50.) Plaintiff's duties included working as a laborer, performing carpentry work, and driving a delivery truck. (*Id.*) Plaintiff alleges that from March 4, 2019, to March 2020, he would regularly work an additional day every other week. (*Id.* at ¶ 51.) During those weeks, Plaintiff worked a total of 48 hours. (*Id.*) From April to July of 2020, Plaintiff worked reduced hours totaling around 20 to 30 hours per week. (*Id.* at ¶ 52.) From August 2020 to May 3, 2023—the date the Complaint was filed—Plaintiff alleges he worked eight additional overtime hours per week and regularly worked over 40 hours a week. (*Id.* at ¶ 53.) From March 2019 to December 2020, Defendant compensated Plaintiff at a "straight-time" rate of $7.50 per hour. (*Id.* at ¶ 54.) This rate was lower than the prevailing minimum wage for Westchester County, which was $12.00 per hour in 2019 and $13.00 per hour in 2020. (*Id.* at ¶ 54.)

Additionally, from March 4, 2019, through December 2022, Defendants purportedly deducted wages in order to pay taxes on Plaintiff's behalf. (*Id.* at ¶ 56.) However, Plaintiff claims that Defendants used withholding as a pretext and retained the deducted funds for themselves. (*Id.*) The purported deductions reduced Plaintiff's compensation by $82–$86 per week and effectively reduced his wage to $7.25 per hour. (*Id.* ¶¶ 56–57.)

Plaintiff asserts several wage and hour violations based on these events. He alleges that Defendants knowingly and willfully: (i) failed to provide proper notice of their pay rate (*id.* ¶ 62); (ii) failed to issue proper wage statements, (*id.* ¶¶ 63, 70–71); (iii) operated their business without paying a lawful federal or state minimum wage, (*id.* ¶ 64–66); (iv) operated without

paying a proper overtime rate, (*id*. ¶ 67); and (v) deducted wages in violation of the FLSA and NYLL, (*id*. ¶ 69). Accordingly, Plaintiff seeks various types of unpaid wages, liquidated damages, statutory penalties, pre- and post-judgment interest, and attorneys' fees and costs. (*Id*. at 18–20.)

### B. Procedural History

Plaintiff filed this Action on May 3, 2023. (*See generally* Compl.) On July 6, 2023, Defendants filed their Answer and Corporate Disclosure Statement pursuant to Federal Rule of Civil Procedure 7.1. (*See* Dkt. Nos. 10, 11.) The Parties submitted a proposed case management plan on September 21, 2023. (*See* Dkt. No. 14.) The Court held a conference on September 22, 2023, during which it approved the case management plan. (*See* Dkt. (minute entry for September 22, 2023); Dkt. No. 15.) The Court also referred the case to Magistrate Judge Victoria Reznik. (*See* Dkt. No. 16.) On February 13, 2024, the Parties informed the Court that they reached a resolution. (*See* Dkt. No. 30.) And on March 21, 2024, the Parties submitted their settlement papers for the Court's approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (*See* Lam Letter at 1; *id*., Ex. A ("Settlement Agreement").)

## II. Discussion

### A. Standard of Review

Under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute." "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The Second Circuit has held the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206. Therefore, the Court must be

satisfied the parties' agreement is "fair and reasonable." *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015); *see also Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (same).

In deciding the fairness of a settlement, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

Although the Court must consider the totality of circumstances, the most significant factors are:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same).

Certain other factors weigh against finding the proposed settlement fair and reasonable, which include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA noncompliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of

4

the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336; *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

This decision "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Personal Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (citation and quotation marks omitted). To this end, courts require information regarding:

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

*Id.* (first alteration in original) (quotation marks omitted) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015)).

B.  Analysis

1.  Settlement Fairness

Under the Proposed Settlement Agreement, Defendants agree to pay Plaintiff a total sum of $30,000.00. (*See* Settlement Agreement ¶ 1.) Defendants would provide three checks: one check to Plaintiff for $9,866.00 less any applicable deductions for alleged lost wages and for which Defendants will provide an IRS Form W-2 and an itemized statement, (*id.* ¶ 1.a); a second check to Plaintiff, for $9,866.00 for alleged liquidated and statutory damages for which Defendants will provide an IRS Form 1099, (*id.* ¶ 1.b); and a final check to Brown Kwon &

5

Lam, LLP for $10,268.00, representing attorneys' fees of $9,866.00 and costs of $402.00, (*id.* ¶ 1.c).

To reach the topline amount, the Parties assumed a best-case recovery of $66,334.25 on all claims. (Lam Letter at 2.) This calculation assumed that Plaintiff worked an average of 40 hours per week, was not compensated at his full and proper minimum and overtime wage, and that there were 35 weeks of improper wage deductions. (*Id.*) Based on this calculation Plaintiff's total unpaid wages amounted to $26,592.13, an equal amount in liquidated damages, $10,000.00 in statutory damages, and $3,150.00 in improper wage deductions. (*Id.*) The Proposed Settlement thus represents 29.7% of that best-case figure. (*See id.*)[1]

Having reviewed the Settlement Agreement, the Court is satisfied it was negotiated in good faith at arm's length and that there was no fraud or collusion. The settlement was reached over several weeks of negotiations between counsel experienced in wage-and-hour disputes. (*Id.* at 3.) The Parties also had the opportunity to conduct four months of discovery during which they could vet the merits of Plaintiff's claims. (*Id.*; Dkt. No. 15.) The Court is also satisfied, based on the Parties' representations, that the settlement will allow the Parties to avoid the anticipated burdens and risks of litigation. Indeed, Plaintiff faces multiple challenges that could result in a lower recovery should he move forward. *See Zorn-Hill v. A2B Taxi LLC*, Nos. 19-CV-1058, 18-CV-11165, 2020 WL 5578357, at *5 (S.D.N.Y. Sept. 17, 2020) (noting courts

---

[1] The Parties calculate the settlement as 45% of Plaintiff's best possible recovery. (Lam Letter 2.) But the numerator in that calculation includes attorneys' fees and costs. (*See id.*) Here, the Court's considers only the net payment to Plaintiff, as courts in this district typically "evaluate the fairness of a plaintiff's recovery after deducting attorney[s'] fees and costs." *See Arango v. Scotts Co., LLC*, No. 17-CV-7174, 2020 WL 5898956, at *3 (S.D.N.Y. Oct. 5, 2020); *see also Zorn-Hill v. A2B Taxi LLC*, Nos. 19-CV-1058, 18-CV-11165, 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020) (considering net award to Plaintiff); *Garcia v. Cloister Apt Corp.*, No. 16-CV-5542, 2019 WL 1382298, at *2 (S.D.N.Y. Mar. 27, 2019) (same).

often "consider[] the settlement amount in light of 'the legal and evidentiary challenges that would face the plaintiffs in the absence of a settlement[.]'" (quoting *Lopez v. Poko-St. Anns L.P.*, 176 F. Supp. 3d 340, 342 (S.D.N.Y. 2016))). For one, even though discovery has commenced, it has not yet concluded and Defendants may produce records that show Plaintiff worked fewer hours than alleged, thereby undermining his wage and hour claims. Additionally, the Settlement avoids dispositive summary judgment briefing, which would have prolonged the case, and risked dismissal of some or all of Plaintiff's claims. (*See* Lam Letter at 3.) Finally, $26,592.13 of the alleged damages represent liquidated damages. (*Id.*) A fact-finder could agree that Defendant acted in good faith and thus reduce Plaintiff's best-case scenario recovery by roughly half. *See Reich v. Waldbaum, Inc.*, 52 F. 3d 35, 38 (2d Cir. 1995) (reversing findings of willfulness and remanding for redetermination of damages).

Moreover, the settlement amount is fair and reasonable. As stated, the proposed settlement amount would allow Plaintiff to recover 29.7% of his best-case recovery—a percentage that the Court considers reasonable compared to similar cases. *See, e.g.*, *Redwood v. Cassway Contr. Corp.*, No. 16-CV-3502, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (holding a net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Rodriguez-Hernandez v. K Bread & Co.*, No. 15-CV-6848, 2017 WL 2266874, at *4–5 (S.D.N.Y. May 23, 2017) (approving settlement sum representing 26% of potential damages as reasonable); *Felix v. Breakroom Burgers & Tacos*, No. 15-CV-3531, 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (approving settlement amount of less than 25% of the maximum possible recovery).

2. Attorneys' Fees

Under both the FLSA and NYLL, a successful plaintiff—including one who settles—is entitled to attorneys' fees. *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), NYLL §§ 198, 663(1)). Although courts may elect to award fees by considering either the lodestar method—the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended— or the percentage method—a percentage of the total amount recovered by the plaintiffs—"[t]he trend in [the Second] Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). But even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria*, 96 F. Supp. 3d at 181. The Court must also determine the reasonableness of the hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

Here, Plaintiff's counsel seeks an award of $9,866.00 in fees and $402.00 costs, with the fee award representing one-third of the settlement amount. (Lam Letter at 4.) For support, he provides a statement of fees and costs coupled with detailed contemporaneous billing records. (*Id.*, Ex. C.) The Court finds the fee request to be reasonable, as courts in the Second Circuit routinely award attorney fees in FLSA cases of approximately one-third of the total recovery.

8

*See, e.g.*, *Pascual v. Three Diamond Diner Corp.*, No. 21-CV-3333, 2023 WL 1518513, at *5 (S.D.N.Y. Feb. 3, 2023); *Zorn-Hill*, 2020 WL 5578357, at *6 (collecting cases); *Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."); *see also Ocasio v. Big Apple Sanitation, Inc.*, No. 13-CV-4758, 2016 WL 5376241, at *2 (E.D.N.Y. Mar. 16, 2016) (noting that the fee sought was "less than the typical contingency fee percentage of 33 1/3%"), *adopted by* 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016).

### 3. Release Provision

Despite its otherwise fair terms, the Court is unable to approve the Settlement Agreement in light of its broad release. The "uniquely protective" nature of the FLSA means courts will not approve settlements containing overly broad release provisions. *See Cheeks*, 796 F.3d at 206 (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."); *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiff] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants' payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants'"); *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants—including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues"). To that end, releases

9

must generally be limited to wage and hour issues, *see Cheeks*, 796 F.3d at 206, and "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as the settled conduct," *Nights of Cabiria*, 96 F. Supp. 3d at 181 (citation and quotation marks omitted).

Here, the relevant language of the settlement agreement discharges:

> Defendants, including their representatives, affiliates, present and former officers, agents, employees, members, shareholders, directors, trustees, insurers, and each and every one of their heirs, executors, administrators, successors and assigns, from all wage-related claims, demands, causes of action and liabilities of any kind, whether known or unknown, asserted or unasserted, that Plaintiff ever had, now has or hereafter may have against Defendants up to and including the date of the execution of this Agreement, which arise under any of the following provisions: Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq.,; New York Labor Law, including the New York Wage Orders and New York Wage Theft Prevention Act; and any other federal, state, or local law concerning payment or reporting of wages.

(Settlement Agreement ¶ 6.) "As written, the Release could potentially extinguish claims under provisions of the FLSA that have no relationship whatsoever to the claims at issue in this case." *See Shah v. 786 MS Corp.*, No. 20-CV-4406, 2021 WL 2789265, at *4 (S.D.N.Y. Apr. 23, 2021) (alterations adopted) (internal quotation marks omitted). Recall that this case relates primarily to Defendants' alleged failure to pay prevailing minimum and overtime wages and their allegedly improper wage deductions. (*See generally* Compl.) Given that starting point, the Court is particularly concerned with the language releasing Defendants from "wage-related . . . liabilities of any kind" and its citation to the entire FLSA. (*See* Settlement Agreement ¶ 6 (releasing claims under "29 U.S.C. §§ 201 et seq").) Without the compound adjective "wage-related," this provision would be an impermissible general release. *See Benshabat v. T-Fusion LLC*, No. 20-CV-3718, 2021 WL 7209244, at *2 (E.D.N.Y. Mar. 19, 2021) (collecting cases). And that adjective's inclusion does not do enough to narrow the release's scope. For instance, is a FLSA claim seeking backpay for a racially motivated termination a "wage-related . . . liabilit[y] of any

10

kind"? How about a claim that an employee was docked pay in retaliation for reporting unsafe working conditions? Regardless of the answers to those questions, the proposed release reaches beyond the scope of the wage and hour claims alleged in this case. Further, there are no unique circumstances present, like a settlement of non-wage-and-hour claims, which would warrant a broader release provision. *See Pascual*, 2023 WL 1518513, at *4 (finding provision covering non-wage-and-hour claims permissible because the plaintiff also settled federal and state discrimination claims). And, as noted, "the caselaw is clear that 'any release provision must be limited to the claims at issue in th[e] [instant] action.'" *Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (quoting *Lazaro-Garcia*, 2015 WL 9162701, at *2; *see also Larrea v. FPC Coffees Realty Co., Inc.*, No. 15-CV-1515, 2017 WL 1857246, at *3 (S.D.N.Y. May 5, 2017) ("[A] number of judges in this District refuse to approve any FLSA settlement unless the release provisions are limited to the claims at issue in this action." (internal quotation marks omitted)); *cf. Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751, 2017 WL 2778029, at *3 (E.D.N.Y. June 26, 2017) (approving a "broad" release, but one with language expressly limiting its scope to claims "relat[ing] to the facts, acts, transactions, occurrence[s], events or omissions alleged in the [l]awsuit").

III.  Conclusion

For the foregoing reasons, the Parties' proposed settlement is denied without prejudice. The Parties may reapply for approval of a settlement that complies with the Court's determinations in this Order.

SO ORDERED.

Dated:   August 14, 2024
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge